No. 04-867

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 155

_____

DANIEL B. CROSBY,

      Petitioner and Appellant,

    v.

STATE OF MONTANA,

      Respondent and Respondent.

_____

APPEAL FROM:    District Court of the Fourth Judicial District,
                     In and for the County of Missoula, Cause No. DV 2003-216
                     The Honorable Douglas G. Harkin, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          William Boggs, Attorney at Law, Missoula, Montana

      For Respondent:

          Hon. Mike McGrath, Attorney General; C. Mark Fowler, Assistant
          Attorney General, Helena, Montana

          Fred Van Valkenburg, Missoula County Attorney; Karen Townsend,
          Deputy County Attorney, Missoula, Montana

_____

                    Submitted on Briefs:  January 11, 2006

                              Decided:  July 11, 2006

Filed:

_____
                       Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Appellant Daniel B. Crosby (Crosby) appeals from the denial of his petition for postconviction relief following his conviction in 1996 for sexual intercourse without consent. Crosby premised his petition in part on the fact that the victim, Crosby's daughter, recanted her testimony nine years later. We reverse and remand.

¶2 We rephrase and address the following issues on appeal:

¶3 1) Did the District Court apply the proper standard to evaluate whether the new testimony entitled Crosby to postconviction relief, when it concluded as a matter of law that the victim's recanting testimony was false?

¶4 2) Did the District Court abuse its discretion when it denied Crosby's motion to strike a portion of Dr. Stratford's testimony?

STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶5 A jury convicted Crosby of sexual intercourse without consent on January 20, 1996, following a five-day trial. The victim of the crime, Crosby's then ten year-old daughter, Shawnetta Crosby (Shawnetta) testified against Crosby at the trial. The District Court sentenced Crosby to ten years at the Montana State Prison, with seven years suspended. Crosby filed a timely notice of appeal, but later asked this Court to dismiss his appeal pursuant to a plea agreement he had entered with the State on an unrelated charge.

¶6 Crosby filed a petition for postconviction relief on February 26, 2003, alleging that newly discovered evidence would demonstrate his actual innocence. Shawnetta's sworn statement, in which she recanted her 1996 trial testimony, accompanied the petition. The

District Court scheduled an evidentiary hearing to address Crosby's petition for postconviction relief and entertained pre-hearing motions. Prior to the hearing, the court issued an order granting in part and denying in part Crosby's motions *in limine*. The District Court also announced that, in determining whether the recanting testimony entitled Crosby to a new trial, it would apply the standard established in *State v. Perry* (1988), 232 Mont. 455, 758 P.2d 268 (*overruled by State v. Clark*, 2005 MT 330, 330 Mont. 8, 125 P.3d 1099), and first conclude whether the recanting testimony was true. Then, only if the court deemed the recanting testimony true, it would apply the six-factor test in *State v. Abe*, 2001 MT 260, 307 Mont. 233, 37 P.3d 77, to analyze whether the new evidence entitled Crosby to a new trial.

¶7     The District Court held the evidentiary hearing on June 23, 2004. Shawnetta, then age 21, testified that her mother had influenced her to accuse her father twelve years prior, and that the events she described when she testified at Crosby's trial did not occur. Crosby and the State each presented expert witnesses to support their respective positions concerning, among other matters, the credibility of childhood testimony given under the type of stressful home conditions presented in this case.

¶8     The court issued its findings of fact, conclusions of law and order denying Crosby's motion for postconviction relief on July 22, 2004. Crosby appealed. The State responded, and then filed a statement of supplemental authority on December 29, 2005, following our decision in *Clark*.

## STANDARD OF REVIEW

¶9     We review a district court's denial of a petition for postconviction relief to

3

determine whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *State v. Jenkins*, 2001 MT 79, ¶ 9, 305 Mont. 95, ¶ 9, 23 P.3d 201, ¶ 9.

¶10     We review a district court's evidentiary rulings for an abuse of discretion. *State v. Grixti*, 2005 MT 296, ¶ 14, 329 Mont. 330, ¶ 14, 124 P.3d 177, ¶ 14.

ISSUE ONE

¶11     Did the District Court apply the proper standard to evaluate whether the new testimony entitled Crosby to postconviction relief, when it concluded as a matter of law that the victim's recanting testimony was false?

¶12     In its order denying Crosby's petition for postconviction relief, the District Court concluded as a matter of law that the recanting testimony given by Shawnetta was untrue. Crosby contends that the District Court improperly imposed the standard taken from *Perry* over the proper criteria established in *Abe*. Crosby states specifically that the criterion in *Perry* that requires the judge to determine "whether the recantation is true" is an improper application of the law, as Montana case law has evolved to replace this standard with a multi-factored test as appears in *Abe* at ¶ 10 and *State v. Cline* (1996), 275 Mont. 46, 52, 909 P.2d 1171, 1175.

¶13     The State responds that Crosby's petition is not properly before this Court because Crosby's failure to file his postconviction petition within one year after his conviction deprived the District Court of jurisdiction. The State claims further that the plea agreement Crosby entered with the State in 1997 estops him from now appealing his conviction for sexual intercourse without consent. Lastly, the State argues that even if

4

the District Court applied the *Perry* principles, it applied the proper standard nonetheless, and Crosby did not suffer prejudice. We address these arguments in turn.

¶14 The State asserts that the one year time limit for filing a petition for postconviction relief following a defendant's conviction, found at § 46-21-102(1), MCA, barred Crosby from bringing his claim. The State's brief references only a "clear miscarriage of justice" as the exception to the time limitations the statute establishes. The State reasons that since the District Court deemed the new evidence untrue, the "miscarriage of justice" exception does not apply.

¶15 This position wholly ignores, however, the exception to the one year time limitation to file petitions for postconviction relief found in § 46-21-102(2), MCA. Section 46-21-102(2), MCA, states that the exception applies when a claim simply "alleges the existence of newly discovered evidence that, *if proved* and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct for which the petitioner was convicted. . . ." (emphasis added). Thus, the plain language of the statute does not require that the newly discovered evidence be proven true *before* the court can hear the petition for postconviction relief. Further, as discussed below, the State's position that the defendant must prove to the judge that the newly discovered evidence is true before the defendant is entitled to postconviction relief is incorrect, as it is premised upon an improper standard for evaluating new evidence. We conclude that the present situation falls squarely within the exception to the one year limit for filing petitions for postconviction relief found at § 46-21-102(2), MCA, and, consequently, Crosby is not statutorily barred from bringing his petition.

¶16    The State claims next that if this Court entertains the present appeal, it will "be assisting Crosby in escaping the obligations of his plea agreement after he has already received its benefits" in contravention of our prior case law. The State presented the identical argument to the District Court and the court did not address it. Our review of the 1997 plea agreement demonstrates that Crosby already completed his obligations under that agreement, and that the agreement did not implicate Crosby's right to file a petition for postconviction relief. We therefore conclude that the State's argument that the plea agreement entered in 1997 bars Crosby's present appeal lacks merit.

¶17    Finally, the State argues that the District Court applied the proper test to determine if the new evidence entitled Crosby to postconviction relief or, alternatively, that the conclusion at which the District Court arrived did not prejudice Crosby regardless of the test applied. The District Court's conclusion of law stated that "[t]he district court is required to grant a new trial only when the trial judge is satisfied the recantation is true." According to the order, Crosby "failed to demonstrate that the recant[ing] testimony of Shawnetta Crosby [wa]s true."

¶18    In *Perry*, 232 Mont. at 466, 758 P.2d at 275, we adopted the Kansas Supreme Court's standard for recanting testimony, and stated that the "trial judge is required to grant a new trial only when he [or she] is satisfied the recantation of the witness is true." However, cases decided subsequent to *Perry* applied a different standard to evaluate new testimony, leading to inconsistencies in our jurisprudence. For example, in 2001 we stated that "motions for a new trial based on newly discovered evidence must establish that such evidence is so material that it would probably produce a different result upon a

6

different trial." *State v. Allen,* 2001 MT 17, ¶ 8, 304 Mont. 129, ¶ 8, 18 P.3d 1006, ¶ 8. Later that same year, however, we applied a multi-factored test, and required that all six factors be met before new evidence entitled a defendant to a new trial. *Abe*, ¶ 10. Ultimately, we recognized and resolved these discrepancies in *Clark,* where we explicitly overruled the statement in *Perry* that a "trial judge is required to grant a new trial only when he is satisfied the recantation of the witness is true." *Clark*, ¶ 32. We reasoned that the standard in *Perry* had "inappropriately place[d] the judge in the role of fact-finder, inevitably, in some cases, in the key matter of the guilt or innocence of the accused." *Clark,* ¶ 32.

¶19 We set forth the following test in *Clark*:

> To prevail on a motion for a new trial grounded on newly discovered evidence, the defendant must satisfy a five-part test:
> (1) The evidence must have been discovered since the defendant's trial;
> (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part;
> (3) the evidence must be material to the issues at trial;
> (4) the evidence must be neither cumulative nor merely impeaching; and
> (5) the evidence must indicate that a new trial has a reasonable probability of resulting in a different outcome.

*Clark*, ¶ 34 (footnotes omitted).

¶20 We acknowledge that in *Clark*, we addressed a motion for a new trial, while the present case involves Crosby's petition for postconviction relief. Nonetheless, we deem it appropriate to apply the same "newly discovered evidence" test in both situations. *See Abe* at ¶¶ 1, 10 (applying the factors to be considered when a district court evaluates a motion for a new trial based upon newly discovered evidence, to a motion for postconviction relief).

7

¶21 In light of the test we established in *Clark*, we conclude that the District Court erred when it said the court should grant a new trial only "when the trial judge is satisfied the recantation is true," and in concluding that the recanting testimony of Shawnetta was untrue. In doing so, the court improperly placed itself in the role of fact-finder in contravention of our holding in *Clark*. Instead, the court should consider all five of the *Clark* factors, including, importantly, whether a new trial would have the *reasonable probability* of resulting in a different outcome. Under this test, the court does not pass on the ultimate truthfulness of the recanting testimony; rather, provided the five *Clark* factors are satisfied, the court leaves this determination to the fact-finder on retrial.

¶22 Justice Warner's dissent states that the District Court "did consider the essential *Clark* factors in making its decision whether a new trial was necessary." (Dissent, ¶ 1). A review of the court's order, however, demonstrates that the court did not use the *Clark* factors and, in fact, engaged in the very analysis *Clark* forbids. The court's order states:

> The Court concludes that the recanted testimony of Shawnetta is untrue. From the foregoing findings of fact and conclusions of law, the Court makes the following order:
> ORDER
> The Petitioner, Daniel B. Crosby, having failed to demonstrate that the recanted testimony of Shawnetta Crosby is true,
> IT IS HEREBY ORDERED that Daniel B. Crosby's petition for post-conviction relief is DENIED.

The District Court thus violated *Clark* when it first determined the ultimate veracity of the recanting testimony, and then used that determination as the sole basis to deny postconviction relief.

¶23 The Dissent does however bring to light some subtle yet important distinctions

8

underlying the *Clark* test--namely, the difference between the district court properly assessing the "weight and credibility" of the recanting testimony, which *Clark* commands, versus the district court  determining the ultimate "veracity" of the recanting testimony, which *Clark* prohibits. A district court's assessment of "weight and credibility" may be made absent an ultimate determination of whether the recanting witness is telling the truth or not, while a district court's determination as to the witnesses' "veracity" is just that--a definitive determination that the recanting testimony is either the truth or a lie.  More importantly, the "weight and credibility" of the recanting witness is not the dispositive factor in assessing whether the new evidence entitles the defendant to a new trial, as was the test in *Perry*.  As the Dissent recognizes, the decision of what effect the recantation of the victim will have may be of "*primary* importance in making the determination whether the new trial would probably result in acquittal." Although of *primary* importance, the effect of the recanting testimony is not *dispositive*.

¶24     Under proper application of the *Clark* test, a possible scenario might be one in which the district judge finds the recanting witness highly credible, but nonetheless denies a new trial under the *Clark* test in light of the strength of the testimony of five other prosecution witnesses presented at the original trial.  Alternatively, a judge might find a witness not particularly credible, but nonetheless grant a new trial under *Clark* because there is a reasonable probability--given the paucity of other evidence adduced at the first trial--that a jury on retrial would acquit the defendant when presented with the new evidence.  In sum, the distinctions set forth in *Clark*, and reaffirmed here, are both appropriate and crucial to ensuring that the reviewing judge does not intrude on the jury's

province as fact finder. *See Clark*, ¶ 32.

¶25 The court's improper application of the law clearly prejudiced Crosby since the court denied Crosby's petition for postconviction relief on the sole basis that it deemed Shawnetta's recanting testimony untrue. We therefore reverse and remand for the District Court to apply the standards espoused in *Clark* in determining whether Crosby is entitled to postconviction relief and a new trial.

ISSUE TWO

¶26 Did the District Court abuse its discretion when it denied Crosby's motion to strike a portion of Dr. Stratford's testimony?

¶27 Crosby filed a motion *in limine*, asking the District Court to preclude the State's expert witness, Dr. Stratford, from testifying. Crosby argued that the subject matter was not appropriate for an expert opinion and that allowing expert testimony regarding another witness's credibility violated Montana case law. The court's order permitted Dr. Stratford to testify, but granted Crosby's motion to "preclude expert testimony from Dr. Stratford regarding the credibility of this particular victim." Crosby asserts that the District Court violated the latter portion of its own order when it permitted Dr. Stratford to testify about Shawnetta's credibility. Crosby further asserts that the District Court compounded its error when it denied his motion to strike Dr. Stratford's testimony.

¶28 During Dr. Stratford's testimony, counsel for the State inquired as follows: "we can't comment specifically about whether her testimony here in court was true or not. But based on all of the materials that you looked at, do you have an opinion about whether it's more likely than not her testimony at the trial was accurate as opposed to the

10

recantation?" In response, Dr. Stratford opined that Shawnetta's testimony "at trial was more accurate than subsequent." Clearly, this testimony violated the letter of the court's correct order *in limine* which precluded Dr. Stratford from testifying to Shawnetta's credibility. At such time as the court on remand re-examines the existing record, we direct the court to disregard this facet of Dr. Stratford's testimony.

¶29 Reversed and remanded for application of the *Clark* test to determine whether Crosby is entitled to postconviction relief.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS


Justice John Warner dissents.

¶30 I dissent from the Court's decision to remand for application of the *Clark* test to determine if Crosby is entitled to postconviction relief. This Court should not remand simply because the District Court, not having the benefit of *Clark* which was later decided, worded its final conclusion of law improperly. The District Court clearly articulated in its order that the recantation was not credible and that the victim had insincere motives in making it. Understandably, the District Court did not express its decision using the language contained in *Clark*. However, it did consider the essential

11

*Clark* factors in making its decision whether a new trial was necessary. Thus, the order of the District Court clearly shows the result was correct.

¶31   Under *Clark*, the result of a motion for postconviction relief alleging actual innocence because a complaining witness has later recanted her accusations, depends upon the circumstances of the case, including the trial court's estimation of the credibility of the recanting witness, the overall strength of the prosecution's case, and the circumstances under which the recantation took place. These considerations are intrinsic to the fifth element of the *Clark* test, which states, "the evidence must indicate that a new trial has a reasonable probability of resulting in a different outcome." *Clark*, ¶ 34.

¶32   Under the circumstances of this case, which are not unique, this fifth prong of the *Clark* test is unquestionably the most significant. As this Court stated in *Clark*, "[t]he fifth element . . . is most likely to be the crux of any district court's evaluation of new trial motions based on new evidence." *Clark*, ¶ 36. Within this fifth element, an assessment of the credibility of the recantation, although not dispositive, is of primary importance in making the determination whether a new trial would probably result in an acquittal. Unfortunately, *Clark's* guidance in applying the fifth element is confusing and rather inconsistent.

¶33   *Clark* declares that under the five factor test, "the district court is not to make factual determinations as to the veracity of the recantation." *Clark*, ¶ 38. Yet, in the same paragraph, the Court states that "determinations of weight and credibility [of recantations] are left to the trial judge." *Clark*, ¶ 38. Simply put, in spite of the Court's attempt to create one, there is no real distinction between the "veracity" of the recantation

12

and the "credibility" of the recantation. Today's opinion requires the District Court to make sense of this distinction without a difference.

¶34 *Clark* expressly overruled the *Perry* standard, that a "trial judge is required to grant a new trial only when he is satisfied the recantation of the witness is true." *Clark*, ¶ 32. Yet, the district court must still consider the "weight and credibility" of the recantation. *Clark*, ¶ 38. Thus, I conclude that *Clark* did not bar the district court from considering the truth (or "credibility") of the recantation. Rather, *Clark* expanded the overall analysis and required examination of several other essential factors. The Court is correct in concluding that a district court cannot base its decision, whether to grant relief, solely on its finding as to the ultimate truthfulness of the recantation. Although credibility is still an essential factor,[1] the district court must also consider any factors relevant to a potential jury's determination of which story of the victim to believe, including the weight of corroborating evidence; and any other evidence presented by the defendant or prosecution that may bear on the ultimate issue of whether the result of a new trial would probably be different. This is exactly what the trial judge did in this case.

¶35 The District Court held an evidentiary hearing to assess the veracity of the victim's recanted testimony, at which she testified. In addition, the District Court heard testimony from two experts and a former police detective. The District Court also considered the circumstances surrounding the victim's recantation and the fact that it

---

[1] *See Clark*, ¶ 37-38.

conflicted with the testimony of other credible witnesses at trial, as well as the original testimony given by the victim.

¶36 After considering all of the evidence, as required by *Clark*, the District Court concluded the recantation was not credible, that is, after considering the weight and credibility of the recantation, which is the province of the trial judge, he did not believe it. When a district court determines the victim's recantation is not credible, a new trial should be denied. *See Clark*, ¶ 37-38. Further, when it considered the seminal question of the victim's credibility, the District Court also took into consideration the other evidence which under *Clark* must be factored into its determination whether the result of a new trial would probably be different.

¶37 In *Clark*, there was no indication from the record why the district court denied the motion for new trial. *Clark*, ¶ 42. Thus, this Court could not discern whether the law had been applied correctly and had to remand. *Clark*, ¶ 42. This case is different. We have a full record and a written order from the trial judge that tell us why postconviction relief was denied. From this we know the determination, that the recantation was not credible, was correctly made because with psychical foresight the District Court considered the factors required by *Clark*. Thus, the District Court, in reality, determined that it was not probable the result of a new trial would be different.

¶38 By remanding with directions to apply the *Clark* test, we are telling the District Court to do what it has already done. In its order, the District Court considered the weight of corroborating evidence, the credibility of the recantation and the circumstances surrounding it, and the longstanding policies and presumptions applicable to recantations

14

and endorsed in *Clark*.[2] The Court ignores the undeniable fact that the District Court considered these factors, each essential under the *Clark* test. The Court blindly focuses on the conclusion that the recantation in this case was untruthful, thus elevating terminology over the substance of the analysis.

¶39 I would conclude that the District Court considered all essential factors under the *Clark* test relevant to the facts of this case. Thus, notwithstanding the ultimate conclusion that the recantation was untruthful, the District Court still met the requirements of *Clark*, even before *Clark* had been decided by this Court.

¶40 Finally, I agree with Justice Rice's dissent concerning the testimony of Dr. Stratford. The record makes it clear that the District Court was keenly aware that an expert witness may not testify directly on the credibility of another witness. I am confident that the trial judge, who has heard considerable expert testimony over the last twenty-five years, is able to differentiate between opinion that is admissible and that which is not. Further, there is little doubt that it was the judge, not the expert, who made the decision on the veracity of the recantation.

¶41 I would affirm the District Court.

/S/ JOHN WARNER

---

[2] As this Court recognized in *Clark*, "recantations are to be 'viewed with great suspicion' and . . . 'demonstrate[] the unreliability of a witness[.]" *Clark*, ¶ 37 (quoting *Perry*, 232 Mont. at 466, 758 P.2d at 275). Further and particularly relevant in this matter, recantations by child victims of sexual abuse are notoriously unreliable and suspect. *Clark*, ¶ 37.

Justice Jim Rice concurring in part and dissenting in part.

¶42 I concur with reversing and remanding this matter for further proceedings under Issue 1. I would not conclude, under Issue 2, that the District Court abused its discretion in denying the Defendant's motion to strike Dr. Stratford's testimony.

¶43 The motion to strike went far beyond the singular question cited in the Court's opinion that touched on the victim's credibility. It sought broad relief. As defense counsel stated at the time, "It's a motion to strike the entirety of [Dr. Stratford's] testimony." Defendant requests the same relief in his appellate briefing: "All of Stratford's testimony should have been stricken." Stratford's testimony was primarily directed to the nature of child sexual abuse and the processes at work when a victim recants earlier testimony, an appropriate subject matter for expert testimony under our case law, as correctly cited by the District Court. Thus, the District Court properly denied the motion in limine, which had sought to exclude the general subject matter of the testimony, and also properly denied the motion made during the hearing to strike the entirety of Stratford's testimony.

¶44 The "more likely than not" question cited in the Court's opinion about the truthfulness of the victim's trial testimony may well have been objectionable on its face. However, after the question was initially asked, the District Court clarified that the prosecutor was not seeking Stratford's opinion about the credibility of the victim's testimony. Stratford then answered the question by discussing the process in general, including: the value of neutrality in child interview questions, the importance of the early interview because of the failure of memory over time, the details provided in a child's

16

narrative, the emotional context of the child's initial statement, the circumstances of subsequent interviews and whether the story has changed over time. Stratford's answer was not directed toward the credibility of the victim. Thus, I believe the District Court handled the matter within its discretion. Further, I would also make clear that we are rejecting the Defendant's request to strike all of Stratford's testimony for purposes of the proceedings on remand. I would not strike any of that testimony.

/S/ JIM RICE